Glenn, Trustee of Nat'l Exp. & Trans. Co. *vs.* Howard and Savage.

(Decided 10th March, 1886.)

---

JOHN GLENN, Trustee of the NATIONAL EXPRESS AND TRANSPORTATION COMPANY *vs.* GEORGE W. HOWARD. SAME *vs.* CHARLES E. SAVAGE.

*Assignee in Bankruptcy—Property of the Bankrupt—Subscription price of Stock of an Incorporated Company— Payment by Instalments—Discharge of Stockholder in Bankruptcy—Action against Bankrupt for an Unpaid Instalment—Debt not Provable in Bankruptcy.*

The law will not compel an assignee in bankruptcy, to accept property of the bankrupt which is onerous, and will yield nothing toward the payment of his debts.

Where the subscription price of the stock of an incorporated company, was only to be paid in such instalments, and at such times, as it should be called for by the company, and at the time of the bankruptcy of a stockholder, and for a considerable time thereafter, no call for the payment of his subscription had been made, the discharge in bankruptcy, under the late bankrupt law of the United States, of such stockholder, is no bar to an action against him for an instalment of his subscription, subsequently called for;— the unpaid subscription for the stock not constituting such a debt or liability as was provable against his estate in bankruptcy, under the provisions of the bankrupt law.

APPEAL from the Court of Common Pleas.

The declaration in the case against Howard, charges that John Glenn, trustee, as hereinafter set forth, sues George W. Howard for money due and owing by the defendant to the plaintiff; for that the said defendant heretofore subscribed for twenty-five shares of the capital stock of the National Express and Transportation Company, a body corporate of the State of Virginia, duly incorporated under the laws thereof, and thereby undertook and promised to pay to the said company for each and every share so subscribed for by the defendant, the sum of one hundred dollars, in such instalments and at such times as said defendant might be lawfully called upon and required to pay the same, according to the legal tenor and effect of the law under which said company was so incorporated, said subscription to said stock made by said defendant, whereby and by force of said subscription, said defendant became and was received and admitted as a stockholder in said company.

And said plaintiff further says, that on the 20th day of September, 1866, the said National Express and Transportation Company, by its deed of that date, duly executed, acknowledged and recorded, assigned and transferred to John Blair Hoge, C. Oliver O'Donnell and John J. Kelly, in trust for the benefit of the creditors of said company, all its property, rights, credits and effects of every kind, in trust, to reduce the same to money, and to apply the proceeds thereof to the trusts declared by said deed, including the trust therein declared for the payment of the debts of said company.

And the plaintiff further says, that afterwards, in a certain cause instituted on the 28th of November, 1871, and depending in the Chancery Court of the City of Richmond, in the State of Virginia, in which John W. Wright, Sheriff of the City of Richmond, and as such official administrator of a certain William. W. Glenn,

deceased, and other persons claiming to be creditors of said company, were complainants, and the said National Express and Transportation Company, the said John J. Kelly, John Blair Hoge and certain other persons, officers of said company, were defendants, it was, on the 14th day of December, 1880, adjudged, ordered and decreed by said Chancery Court, the same being a Court of competent jurisdiction, that said plaintiff should be, and he was by said decree, appointed and constituted trustee, to execute the trusts of said deed of trust, in the room and stead of the trustees originally created by said deed of trust, and to whom said deed was executed as aforesaid.

And said plaintiff further says, that it was in said cause and by said Court further adjudged, ordered and decreed, that a large amount of debts secured by said deed of trust of said National Express and Transportation Company remained unpaid, and entitled to be paid out of the property conveyed by said deed, and that of the sum of one hundred dollars for each and every share of the stock of said company, undertaken and promised to be paid for by the subscribers for said stock and their assigns, stockholders of said company, in such instalments and at such times as said subscribers and their assigns might be lawfully required to pay the same, according to the legal tenor and effect of the law under which said company was incorporated and said stock subscribed for, the sum of eighty dollars per share had never theretofore been called for, or required to be paid by the president and directors of said company, and that said sum of eighty dollars per share for each and every share of said stock subscribed for yet remained liable to be called for, and required to be paid by the subscribers for said stock, and their assigns, stockholders of said company, according to the legal tenor and effect of their subscription for the same, as hereinbefore set forth.

And it was further adjudged, ordered and decreed, that it was necessary and proper that thirty per cent. of the

par value of each share of said stock should be called for and required to be paid by the subscribers therefor, and their assigns, for the purpose of paying the debts of said company, under the provisions of said deed of trust; and it was accordingly adjudged, ordered and decreed by said Court in said cause, that a call and assessment be, and the same was thereby, made upon the stock and stockholders of said company, and their assigns, of thirty per centum of the par value of said stock, being thirty dollars on each and every share thereof, the same when paid, to be paid and received by the said plaintiff, as trustee under said deed, in the room and stead of the original trustees therein named.

And the plaintiff further says, that he accepted the appointment so made by said decree, and complied with the terms and conditions thereof, and was and is duly qualified to act as such substituted trustee, and to have the rights and perform the duties conferred upon and required of him by said decree.

And he further says, that by force of said decree, and of the statute of the State of Virginia, in such case made and provided, upon accepting such appointment as trustee, and qualifying as such, as required by said decree, he, the said plaintiff, then and there became and was, and still is, substituted to all the rights, powers, duties and responsibilities of the trustees named in said deed of trust, and became and was, and still is, lawfully entitled to receive and collect the said assessment or call of thirty dollars per share on each and every share of stock of said company, from the persons liable to pay the same.

And the plaintiff further says, that it was further adjudged, ordered and decreed, that he, as such substituted trustee, be, and he was, by said decree, authorized and directed to collect and receive the said call and assessment, and to take such steps to that end as he should be advised.

And the plaintiff further says, that by force of said contract of subscription to the stock of said company, and of said call and assessment so made by said decree, the said defendant became and is indebted and liable to pay to him the sum of seven hundred and fifty dollars, being the amount of thirty dollars on each of said shares of the stock of said company, so as aforesaid subscribed for by said defendant; and being so liable to pay, the said defendant, in consideration thereof, promised to pay said sum to the plaintiff when thereto requested.

But he says that the defendant, although thereto requested, failed and refused to pay the same to the said plaintiff.

The declaration against Savage was identical with the foregoing, save in the name of the defendant, and the number of shares of the capital stock of the company for which he had subscribed, being in his case thirty, and the amount assessed upon his said shares, which was nine hundred dollars.

The defendant Howard, pleaded: 1st. That he did not promise as alleged; 2nd. That by an order of the District Court for the Maryland District, sitting in bankruptcy, passed on the 14th of September, 1871, he was forever discharged from all debts and claims, which by the Act of Congress, approved 2nd of March, 1867, entitled an Act to establish a uniform system of bankruptcy throughout the United States, were made provable against his estate, and which existed on the 22nd of January, 1870. The defendant relied on said discharge in bankruptcy, and charged that the alleged subscription to the capital stock of the National Express and Transportation Company in said declaration mentioned, was long anterior to the date of his discharge, and was forever barred thereby.

The defendant Savage pleaded: 1st. That he never promised as alleged; 2nd. That he never was indebted as alleged; and 3rd. That since the incurring of the

alleged obligation, which is the cause of action in this case, he has been declared a bankrupt in proceedings in bankruptcy, instituted against him in the District Court of the United States for the District of Maryland, and by an order of said Court sitting in bankruptcy, passed on the 15th of November, 1879, he has been forever discharged from all debts and claims which by the Bankrupt Law of the United States were made provable against his estate, and which existed on the 24th of June, 1878, excepting such debts, if any, as were excepted by said law from the operation of a discharge in bankruptcy. And the defendant charged that the alleged cause of action was provable against his estate in bankruptcy.

Issue was joined on the first plea of the defendant Howard, and the plaintiff demurred to the second plea, and, by agreement, filed a replication which is sufficiently set out in the opinion of this Court.

In the suit against Savage, issue was joined on the first and second pleas, and to the third plea the plaintiff interposed a demurrer, and by agreement filed a replication identical with the one set forth in the case against Howard. In each case the defendant demurred to the plaintiff's replication, and in each case the plaintiff's demurrer was overruled and the defendant's demurrer was sustained. An appeal was taken in each case by the plaintiff.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*John M. Glenn* and *Charles Marshall*, for the appellant.

1. In order to decide whether the liability of the bankrupt holder of the stock was a claim provable in bankruptcy, it is necessary, in the first instance, to ascertain exactly the nature of the liability to which the bankrupt stockholder was subject at the time of his application and discharge.

It will be borne in mind that the corporation had made a general assignment, for the benefit of its creditors, 20th September, 1866.

The decree set forth in the declaration establishes the following propositions, conclusively, for the purposes of this suit: 1st. That the deed of trust is valid. 2nd. That it passed the money remaining unpaid and uncalled for in the hands of the stockholders to the trustees, but not the right to make calls or to sue for the money until a call should be made by the company, or in its default, by the Court.

Now, the legal effect of the deed of trust was to take away the right of the creditors of the company to obtain payment of their debts, except through the deed of trust itself and by the powers and rights it conferred upon the trustee.

The difference between the rights of the *company* as against its stockholders and those of the *creditors* of an insolvent corporation, must not be lost sight of. The former are purely legal rights, cognizable only in a Court of law, and enforcible only and strictly according to the terms of the contract of subscription.

The company has no *equity* whatever against its stockholders to require them to pay their subscriptions.

It has *contracts* with them, which it can enforce in a suit at law, but it is quite clear that it could not maintain a suit in equity for that purpose. Its remedy at law is complete and perfect. It has only to make a call, and sue for it if not paid. It cannot sue one stockholder for the whole amount of his subscription, but it must make a call upon all the stockholders for a like part of their several subscriptions, and it cannot make one pay in any greater ratio to his subscription than another. Now this being the right of the company, it could not of course pass any other or greater right to its assignee. It passed to him no *equitable* right, because it had none to pass. It had

to make all stockholders pay alike, without distinction, and its assignee must do the same thing.

The right of the creditor of an insolvent corporation, against the stockholders, is something entirely different; indeed, something inconsistent with that of the company.

The creditor's right, or, as it is sometimes called, the creditor's *equity*, arises from the fact that he has given credit, not to the stockholders personally, but to the capital of the company, out of which only he can get satisfaction. So that in the case of an insolvent corporation, the part of the capital remaining unpaid is regarded as a trust fund dedicated to the payment of corporate debts. It is the duty of the company to call in this fund, and if it neglects or refuses to do so, a Court of equity will do it in the exercise of that well known branch of its jurisdiction, the prevention of a failure of a trust.

Where the company has become insolvent, the Court will enforce the creditor's equity in one of two ways.

Sometimes it will appoint a receiver, and call in from the body of stockholders such an assessment as will suffice to pay all the creditors who unite in the suit. In those cases it adjusts all the equities among the stockholders, and makes each one pay his part ratably. This form of procedure can only be pursued by a Court of the domicil of the corporation having jurisdiction over it.

Sometimes it will allow creditors to proceed directly against one or more stockholders, make them pay all they owe, if necessary, and leave them to seek for contribution from their co-stockholders. *Ogilvie vs. Knox Ins. Co.*, 22 *How.*, 380; *Hatch vs. Dana*, 101 *U. S.*, 205.

This is the *creditor's equity* against stockholders, and the laws that govern it, the Statute of Limitations applicable to it, are entirely distinct from those that govern the rights of the company. The effect of the deed of trust in this case, was to render it impossible for a creditor or for the whole body of creditors to enforce their de-

mands by means of the equity of *creditors against stock-holders* in either of the modes above pointed out.

Had the company gone into technical bankruptcy in 1866 instead of making the voluntary deed of trust, no one would pretend that a creditor could have proceeded against a stockholder in the way that was pursued in *Ogilvie vs. Knox Ins. Co.*, or *Hatch vs. Dana.* The answer to such an attempt would have been that the property of the company was vested in the assignee in bankruptcy, and that the creditors must seek relief through him and his rights.

So in this case, the complete answer to a suit based on the principles asserted in those two cases, would be that the deed of the 20th of September, 1866, had passed all the property of the company, including the money in the hands of the stockholders, to the trustees in the deed, and that the creditors must enforce their claims through them, and through the exercise of the powers vested in them by the deed.

The deed of trust then became the law of the settle-ment of the affairs of this company, as effectually as the bankrupt law would have controlled that settlement had the company gone into bankruptcy, instead of making the deed. Its assets can be realized only by the use of the rights and powers of the trustees, just as in bank-ruptcy they could be realized only by the use of the rights and powers of the official assignee. In either case, the peculiar remedy to enforce the *creditor's equity*, as above defined, was taken away. Consequently, when we are called upon to decide whether the claim against the defendant was provable in bankruptcy, we must remem-ber that the only claim against him was *that of the trus-tees under the deed*, and not that of the individual credi-tor, nor that of the whole body of creditors, *except as they are represented by the trustees in the deed.*

What then was the claim of the trustees against each stockholder? It was the right to require him to pay his

proper contribution, in proportion to his holding of stock, for the purpose of paying the debts of the company; but that right could not be enforced until the company, or the Court, on default of the company, had put the trustees in a position to sue according to the terms of the contract of the stockholder, that is, by calling in the whole or a part of the uncalled subscription.

The trustees under the deed could not make one stockholder pay in full and leave him to seek contribution from his co-stockholders, because the company has no such right, and of course could not have passed it to its assignee. .

The claim of the trustees under the deed, like that of the company, was to require each stockholder to pay so much of his subscription as upon an account of the debts of the company and of the number and solvency of its shareholders, might be found necessary to provide a fund sufficient to pay all debts and expenses, as provided by the deed of trust.

The bankruptcy of the corporation does not alter the terms of the contract between it and its stockholders, and all who claim through the corporation must claim according to the terms of that contract. *Chandler vs. Siddler,* 3 *Dillon C. C.,* 477 ; *Robertson vs. Sibley,* 10 *Minn.,* 330, 331.

II. Now was such a claim as the trustees under the deed of trust had against each stockholder, provable in bankruptcy against any stockholder prior to the decree that levied the assessment?

Could the amount of that claim have been proved in any bankruptcy proceedings in Maryland, against a Maryland bankrupt?

Could the amount necessary to ascertain and fix the amount to be paid have been taken in the Bankrupt Court? These questions must all be answered in the negative. Not only was it impossible at the time of the

bankruptcy to ascertain the amount of the liability of the bankrupt on the shares held by him, but it was quite possible that no call would ever be made. But assuming that it was certain at that time that a call would be made, the amount of the call depended on several contingencies. The directors having refused to make a call, it became necessary to apply to a Court of competent jurisdiction. Before the Court could determine whether a call should be made it was necessary that all claims against the company should be examined and the question of the liability of the company to pay them settled. The amount of the call would then depend upon the sum total of the claims which were declared to be valid, upon the amount of interest chargeable on the debts—more or less, according to the time consumed in settling the questions raised before the Court—and the costs incident to the proper administration of the trust. And these questions were such that they could not have been enquired into by a Bankrupt Court in a case where a stockholder and not the company was the bankrupt. *Glenn vs. Williams*, 60 *Md.*, 93, 122 ; *South Staffordshire R. Co. vs. Burnside*, 5 *Wels. Hur. & G.*, 129 ; *Mudge vs. Rowan*, L. R., 3 *Exch.*, 85 ; *General Discount Co. vs. Stokes*, 17 *C. B., N. S.*, 765, (112 *Eng. C. L.;) Betteley vs. Stainsby*, L. R., 2 *C. P.*, 568 ; *In re General Estates Co., Hastie's Case*, L. R., 4 *Ch. App.*, 274 ; *Amicable Ins. Co. vs. Malone*, 6 *Ir. Rep. Eq.*, 272 ; *Furdoonjee's Case*, L. R., 3 *Ch. Div.*, 264 ; *Financial Corporation vs. Lawrence*, L. R., 4 *C. P.*, 731 ; *Riggin vs. Magwire*, 15 *Wall.*, 549 ; *Pierce vs. Wilcox*, 40 *Ind.*, 70 ; *Robinson vs. Pesant*, 53 *N. Y.*, 419 ; *Greenville & Columbia R. R. Co. vs. Maffett*, 8 *S. C.*, 307 ; *Jacobson vs. Horne*, 52 *Miss.*, 185 ; *United States vs. Rob Roy*, 13 *Bank Reg.*, 235.

III. The plea of discharge in bankruptcy is not good, because that mere fact does not show that defendant, when he went into bankruptcy, assigned his shares to the

assignee, and that the latter accepted them. If he did not assign them, but remained a stockholder after his bankruptcy, the discharge would not operate. The general assignment of the bankrupt, without actual acceptance of the shares by the assignee, would not determine the defendant's character as stockholder. The assignee is not obliged to accept all the property that would pass by the general terms of the assignment, nor is it his duty to do so. The right of the assignee to refuse to accept property covered by the general terms of the assignment, but the acceptance of which would be prejudicial to the estate by imposing obligations upon it beyond the value of the property, is unquestionable; and in any case where the assent of the assignee or other act is necessary to complete the transfer to him, such assent or act must be alleged and proved; otherwise, the assignment fails and the property remains in the assignor. The plea of bankruptcy, therefore, without the allegation that the assignee accepted the assignment of the shares, leaves the assignor still in possession of and chargeable with them as to all assessments made after his discharge, and therefore the plaintiff's demurrer must be sustained. *Bourdillon vs. Dalton, Peake N. P.*, 238; *Turner vs. Richardson*, 7 *East*, 335; *Wheeler vs. Brumah*, 3 *Camp.*, 340; *Copeland vs. Stephens*, 1 *Barn. & Ald.*, 593; *Horwitz vs. Davis*, 16 *Md.*, 313; *Martin vs. Black*, 9 *Paige*, 641; *Ex parte Houghton, et al., Re Fortune*, 1 *Lowell*, 554; *In re Ten Eyck & Choate*, 7 *Bank. Reg.*, 26; *In re Webb & Co.*, 6 *Bank. Reg.*, 302; *Savory vs. Stocking*, 4 *Cush.*, 607; *Martin's Patent Anchor Co. vs. Morton*, 3 *Q. B.*, 306; *Amicable Ins. Co., Maline's Case*, 6 *Ir. R. Eq.*, 272; *Levi vs. Ayres, L. R.*, 3 *App. Cases*, 842; *American File Co. vs. Garrett*, 110 *U. S.*, 288; *Rhoades vs. Blackiston*, 106 *Mass.*, 334; *Smith vs. Gordon*, 6 *Law Rep.*, 317; *Amory vs. Lawrence*, 3 *Cliff.*, 523; *Streeter vs. Sumner*, 31 *N. H.*, 542; *Rugely & Harrison vs. Robinson*, 19 *Ala.*, 404.

*John Howard,* filed a brief for the appellant.

*Stewart Brown,* and *Sebastian Brown,* for the appellees.

The assignment of the company for the benefit of its creditors was made many years before either of these defendants went into bankruptcy, and consequently their discharges are a bar to the present suits, if the debts were, under the Bankrupt Act, provable in bankruptcy. *Revised Statutes of the United States, 2nd Ed.,* 1878, *sec.* 5115, *Title, Bankruptcy,—Act of March 2nd,* 1867.

By this section the bankrupt is "discharged from all debts and claims which by said Title are made provable against his estate."

Section 5117 designates the class of liabilities which a discharge in bankruptcy does not cover. A stockholder's liability for subscription to stock, as was decided in *Morrison vs. Savage,* one of these defendants, 56 *Md.,* 143, is not one of the excepted debts mentioned in section 5117.

Section 5119 provides that a discharge in bankruptcy shall "release the bankrupt from debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy." Section 5068 provides that contingent debts and liabilities shall be provable against the estate, and it would seem that this section was designed to cover all demands of every kind, not enumerated in other sections and not excepted by section 5117. No such complete provision, as is contained in section 5068, is found in the National Bankrupt Act of 1841; and the case of *Riggin vs. Maguire,* 15 *Wall.,* 549, both on the facts and on the law as it then existed, has little or no application to the question involved in these suits.

These claims were provable against the estates of these bankrupts under section 5068, and therefore, whether proved or not, the discharges are a bar to the plaintiff's right to recover.

The assignment for the benefit of creditors was in 1866. At that time, whether calculated or not, the debts of the company, for which the stockholders became liable, existed, and they could neither be increased nor decreased from that time. It may have been inconvenient to ascertain these debts, but surely a legal right cannot be withheld because of such inconvenience. As the debts existed they could be, as they subsequently were, ascertained; and as they were ascertainable they were provable, and the discharge is a bar. *In re Land Credit Co., McKewen's Case,* 19 *W. R.,* 738; *Waddington's Case,* 20 *W. R.,* 432.

The company commenced to be wound up when the deed was made for the benefit of creditors. The applications for the benefit of the Bankrupt Act in these cases, being subsequent to the proceedings to wind up the affairs of the corporation, the discharges are a bar to these suits. *Financial Corp. vs. Lawrence, L. R.,* 4 *C. P.,* 731; *Thompson on Liability of Stockholders,* secs. 4, 243, 244; *Parbury's Case,* 3 *De G., F. & J.,* 80; 5 *De G. & Smale,* 400.

The Circuit Court of the United States for the District of North Carolina, in cases identical with those at bar, wherein the present plaintiff sued stockholders in this Transportation Company on similar assessments, decided recently that the discharges in bankruptcy were a complete defence to the plaintiff's right to recover.

ALVEY, C. J., delivered the opinion of the Court.

The two appeals, the one of Howard and the other of Savage, at the suit of Glenn, trustee, may be considered together, as they both present the same state of pleading, and the same questions for consideration.

The defendants in these appeals were each a subscriber to a certain number of shares of the capital stock of the National Express and Transportation Company, a corporation duly incorporated under the laws of the State of

Virginia; and being sued for a call on the stock, the principal question is, whether the discharge of the defendant in bankruptcy, under the Bankrupt Law of the United States, before the call on the stock sued for was made, will bar the recovery?

The question in each case arises upon a demurrer to the pleading; and the contract of subscription to the stock, as set out in the declaration, is, that the defendant "thereby undertook and promised to pay to the said company, for each and every share so subscribed for by the defendant, the sum of one hundred dollars, *in such instalments and at such times as said defendant might be lawfully called upon and required to pay the same,* according to the legal tenor and effect of the law under which said company was so incorporated." The law under which the company was incorporated, as shown by the case of *Glenn, Trustee vs. Williams,* 60 *Md.,* 93, requires that there shall be paid, upon each share subscribed for, two dollars, at the time of subscribing, and the residue thereof *as required by the president and directors;* and if any money which any stockholder has to pay upon his shares be not paid *as required by the president and directors,* the same, with interest thereon, may be recovered by warrant or action, according to amount, &c.

The subscription of each of the defendants was made in 1865, and the company was duly organized and went into operation; but soon becoming embarrassed, on the 20th of Sept., 1866, it made a general deed of assignment for the benefit of its creditors. In the fall of 1871, certain of the creditors of the company instituted suit in the Chancery Court o the City of Richmond, against the corporation, and the trustees named in the deed, for the purposes of account and liquidation of the affairs of the corporation; and in that proceeding a decree was passed on the 14th of December, 1880, whereby the former trustees were displaced and the present plaintiff appointed in

their stead, to execute the trust created by the deed of assignment. At the time of that decree there remained about eighty per cent. of the amount of each share of stock subscribed, still uncalled for and unpaid; and the Court, upon adjudicating the amount of the indebtedness of the corporation, ordered and directed an assessment of thirty per cent. of the par value of each share, to be made on the unpaid subscriptions, for the purposes of liquidation, with authority and direction to the plaintiff, as trustee, to proceed by suit or otherwise to collect such call. To the suits instituted under this authority against the defendants, they each pleaded in bar his discharge under the Bankrupt Law of the United States. In the case against the defendant Howard, the petition for adjudication was filed on the 22nd of January, 1870, and the final discharge was ordered the 14th of Sept., 1871; and in the case against the defendant Savage, the petition for adjudication was filed on the 24th of June, 1878, and his final discharge was ordered the 15th day of November, 1879. In each case the final discharge was obtained, and, for aught that appears, the estate fully settled, before the assessment was ordered by the decree; though it is alleged in the plea, in both cases, that the debt or claim sued for existed on the day of the filing of the petition for adjudication in bankruptcy, and that the same was provable against the bankrupt estate in those proceedings. To this plea the plaintiff interposed a demurrer, and also, by agreement, filed a replication, setting forth that the stock of the company, long prior to defendant's bankruptcy, had ceased to be of any value, and was onerous and unprofitable to the holders thereof, and was so at the time of the defendant's assignment in bankruptcy; and being so worthless and onerous, it was the duty of the assignee in bankruptcy not to accept the defendant's stock as part of his estate in bankruptcy, and that he did not accept it, nor did it vest in him, but continued the prop-

erty of the defendant, and the defendant continued to be a stockholder in the company, and was registered as such on the books of the company at the time of the making of the assessment under the decree of the 14th of December, 1880. To this replication there was a demurrer by the defendant. The case was thus presented, by agreement of the parties, upon the demurrer; and the plaintiff's demurrer to the plea was overruled, and that of the defendant to the replication sustained; and upon this ruling there was judgment for the defendant.

The facts alleged in the replication may be taken to be admitted by the demurrer, unless by operation of the bankrupt law the title to the stock passed to and was vested in the assignee *in invitum.* It would appear, however, that there could be no object or beneficial purpose subserved by casting valueless property upon the assignee against his consent, and which could only be onerous to him, and detrimental to the interest of the creditors. The great object of the assignment in bankruptcy is to appropriate the bankrupt's estate to the payment of his debts, but property that will yield nothing to this purpose the law will not compel the assignee to accept. If in fact the shares of stock, in respect of which the call sued for was made, were transferred to the assignee in bankruptcy, by virtue of the general assignment from the bankrupt, then, of course, the defendant is not liable for any of the subsequent calls on the shares. But we discover nothing in the law that made it compulsory upon the assignee to accept the shares, and it is alleged in the replication, and admitted by the demurrer, that he did not accept them, but that the same still belong to the defendant; and such we must take to be the fact.

In the recent case of the *American File Co. vs. Garrett,* 110 *U. S.,* 288, 295, where there was a question involved as to the liability of assignees in bankruptcy in respect to shares of stock held by the bankrupt, and

whether the title to the stock had so devolved upon the assignees as to make them, or the assets in their hands, liable for and on account of the individual liability of the stockholders for the debts of the corporation, the Supreme Court said: "It is well settled that under the circumstances of the case, neither the assignees nor the assets in their hands are subject to the individual liability which attaches to stocks held by the bankrupt. The evidence does not show that the assignees acted in any way as stockholders, that they ever attended any meetings of the corporation, or that their names appeared upon its books, or that they treated the stock standing in Chapman's name as an asset of his estate." And further on in the opinion the Court said: "It has long been a recognized principle of the bankrupt laws that the assignees were not bound to accept property of an onerous or unprofitable character; and as the assignees of Chapman never accepted the stock, and never consented to become stockholders in the *American File Company*, it follows, that neither they nor the assets of Chapman in their hands are subject to the individual liability of stockholders for the debt of the corporation." And in support of the proposition that the assignees did not take the stock, and were not bound in respect to it, the Court cite with approval the cases of *South Staffordshire R. Co. vs. Burnside*, 5 *Ex.*, 129; *Furdoonjee's Case*, 3 *Ch. Div.*, 268; *Ex parte Davis*, 3 *Ch. Div.*, 463; *Streeter vs. Sumner*, 31 *N. H.*, 542; *Amory vs. Lawrence*, 3 *Cliff.*, 523; *Rugely & Harrison vs. Robinson*, 19 *Ala.*, 404.

But while it is true that the stock has never passed to or been accepted by the assignee in bankruptcy, it does not follow, as a necessary legal consequence, that the discharge in bankruptcy may not constitute a bar to the plaintiff's right to recover for the calls on the stock. This depends upon the question whether the unpaid subscription for the stock constituted such a debt or liability

Glenn, Trustee of Nat'l Exp. & Trans. Co. *vs.* Howard and Savage.

as was. provable in the bankruptcy proceedings against
the bankrupt's estate. If calls had been made prior to
the bankruptcy of the defendant, and remained unpaid,
they, beyond doubt, would have been covered by the dis-
charge, and their recovery barred. But where, as in this
case, the subscription price of the stock is only to be paid
in such instalments and at such times as it may be called
for by the company, and at the time of the bankruptcy of
the stockholder, and for a considerable time thereafter,
and after the settlement of his estate, there is in fact no
call made, the question arises, what claim could have
been proved, and by what means proved, against the
bankrupt's estate?

The determination of this question must depend upon
the terms of the statute, and the judicial construction of
those or similar terms, in cases that have arisen upon the
subject.

Section 5067, United States Rev. Stats., provides that
" All debts due and payable from the bankrupt at the
time of the commencement of proceedings in bankruptcy,
and all debts then existing but *not payable until a future
day,* a rebate of interest being made when no interest is
payable by the terms of the contract, may be proved
against the estate of the bankrupt." Section 5068, pro-
vides, that "In all cases of *contingent* debts and *contingent*
liabilities contracted by the bankrupt, and not herein
otherwise provided for, the creditor may make claim there-
for, and have his claim allowed, with the right to share
in the dividends, if the contingency *happens before* the
order for the final dividend; or he may, at any time,
apply to the Court to have the *present value* of the debt
or liability *ascertained and liquidated,* which shall then
be done in such manner as the Court shall order, and he
shall be allowed to *prove for the amount so ascertained.*"
And sect. 5119 provides that a discharge in bankruptcy
duly granted, shall release the bankrupt from all debts,

claims, liabilities, and demands, which *were* or *might have been* proved against his estate in bankruptcy: But no debt or liability not provable as provided could be allowed, and, of course, would not be affected by the discharge of the bankrupt. Sect. 5072.

Sections 5067 and 5068 of the Rev. Stats. just quoted, were provisions embraced in sect. 19 of the Bankrupt Act of 1867, ch. 176, and upon examination it will be found that that section of the Act of 1867, in providing for the proof of debts payable *in futuro*, and debts and liabilities depending upon contingencies, is in no material respect different from section 5 of the Bankrupt Act of 1841. And the provisions of these sections in regard to the proof and allowance of debts payable at a future day, and of contingent debts and liabilities, while somewhat different in phraseology, do not essentially differ from the provisions found in sections 51 and 56 of the Bankrupt Act of 6 Geo. 4, ch. 16. The construction, therefore, placed upon these several similar provisions, will greatly aid in arriving at a conclusion with respect to the present question.

Now, was there a provable debt or liability against the bankrupt's estate? It must be conceded that there was no right of action until there was a call made, either by the president and directors of the company, or by a Court of equity; for it is clear the trustee under the deed of assignment had no power to make a call upon the stock. Until there was a call legally made, there could be no recovery against the stockholder, either by the company or its assignees. This is a plain proposition, and has already been determined by this Court, in the case of *Glenn, Trustee vs. Williams*, 60 *Md.*, 93. As against the company, and those claiming to hold under it, the stockholder has a right to stand upon the terms of his contract, and that contract created no obligation upon him to pay, except upon a general call legally made upon all the

stockholders; and in the absence of such call, no one could foretell, or have the means of ascertaining, what amount, or when, the stockholder would be required to pay on his stock, or whether he would ever be required to pay at all. Until the affairs of the corporation were wound up and the amount of its indebtedness ascertained, the amount required to be paid by the stockholders for purposes of liquidation could not be determined; and Bankrupt Courts are not clothed with power or jurisdiction to take cognizance of all the complicated affairs of corporations, and direct and control their liquidation, in order simply to render provable a claim against the estate of an individual bankrupt stockholder, who may happen to hold stock, however small in amount, subject to calls. Especially could no such proceeding be had by the Bankrupt Court in regard to the affairs of corporations existing in other jurisdictions. The proceeding in bankruptcy is a summary statutory proceeding, and the only parties thereto, as those proceedings are ordinarily conducted, are the debtor, his assignee, and his creditors. Any attempt on the part of a Bankrupt Court to take jurisdiction of the affairs of a corporation, and all the parties concerned therein, (except where the corporation is itself the bankrupt debtor,) in order simply to determine for what amount a particular claim should be proved against the estate of a bankrupt stockholder, would not only be an anomalous proceeding for which, as we suppose, no precedent could be found, but would be truly startling in its consequences. If then the Bankrupt Court could not, in the absence of a call made, determine the provable amount of the claim, under the provision of the statute, for want of proper *data*, how could the amount have been ascertained? It is contended that the claim could have been proved for the entire amount of the unpaid subscription. But to have allowed that to be done would have been doing manifest injustice to the other creditors of the bankrupt; for if a

dividend were declared to a claim for eighty per cent. of the par value of the stock, when only thirty per cent. might be the most that would ever be called for, it requires no argument to show that great injustice would be done the other creditors of the bankrupt, in paying a dividend to a debt larger than was really due.

Nor is it anything to this case, that the creditors of the corporation had their remedy in equity against the stockholders, to have applied to the payment of their claims the full amount of the outstanding unpaid subscriptions. That is the creditor's right or equity as against the stockholders, upon default of the corporation; and a Court of equity proceeds, in such case, upon the ground that the unpaid subscriptions to stock constitute a trust fund for the payment of debts; and even though the subscription is payable only upon call, a Court of equity will make its own call a substitute for that of the corporation; as in the case of *Hatch vs. Dana,* 101 *U. S.,* 205. But the fact that the entire amount of the unpaid subscription could, in a Court of equity, be proceeded against and applied by creditors of the corporation, does not in any manner affect the question of the non-provable nature of the claim as between the corporation, or its assignee, and the bankrupt estate of the stockholder. The rights as between them are legal rights, and such rights can be availed of only according to the terms of the contract of subscription; and even upon the supposition that the claim was a provable one, without a precedent call, none but the corporation or its assignee could present and make proof of the claim in bankruptcy.

But the question would seem to be quite clearly settled upon the authority of decided cases, as well as upon principles of reason.

The case of *Riggin vs. Magwire,* 15 *Wall.,* 549, arose upon the construction of the 5th section of the Bankrupt Act of 1841, in regard to the right to prove "uncertain

and contingent demands." That was an action for breach of covenant that the defendant had an indefeasible estate in fee in land sold by him, but which in fact was subject to an inchoate right of dower therein, and which right had not become consummate by the death of the husband, at the time of the bankruptcy of the defendant. It was there contended that the value of the claim for dower in the land could have been easily established, and ought to have been proved; but the Court said "that as long as it remained wholly uncertain whether a contract or engagement would ever give rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable under the Act of 1841." And it was accordingly held that the claim was not provable in bankruptcy, and therefore not barred by the discharge.

The case of the *South Staffordshire R. Co. vs. Burnside*, 5 *Exch.*, 129, is a leading case upon the subject, and the principle of it has been followed in all the subsequent cases in the English Courts. The action there, as in the present case, was brought for calls upon corporate stock. The defendant, the stockholder, had become bankrupt on the 8th of Feb., 1848; and on the 18th of the same month a call was made, and three other calls were subsequently made; and on the 24th of April, 1848, the defendant obtained his certificate of discharge as a bankrupt, which he pleaded in bar of the right to recover. The case was thoroughly argued, and was most carefully considered by the Court. The decision turned upon the construction of sections 51 and 56, of the Bankrupt Act of 6 Geo. 4, c. 16; the 51st section relating to the proof of debts payable *in futuro*, and section 56 to debts or demands payable upon contingency. There the Court held, that the bankrupt discharge was no bar to the recovery of the calls made subsequent to the defendant's becoming a bankrupt.

PARKE, B., in delivering the considered judgment of the Court, after stating the facts, and the contention of the parties, proceeds: "The property of the shares, therefore, continuing in the bankrupt, the next question is, whether the company are barred by his certificate, on the ground that this was a debt provable under the *fiat* as a debt due *in futuro*, under the 51st section, or on a contingency, within the meaning of the 56th section of the 6 Geo. 4, c. 16.

"That it was not a debt *in præsenti* payable *in futuro*, we consider to be quite clear. The statute which enables the company to recover calls, no doubt merely enforces an obligation on the shareholders, created by contract. If the defendant contracted with the company to take twenty shares, upon each of which the capital to be contributed was 20£, he may be said to have agreed with them to pay 20£ per share by such instalments as, according to the statute, they were entitled to require. If he purchased the shares from another, he may be considered as having taken upon himself the contract of the vendor to the like effect." And after referring to the provisions of other statutes, the Judge concludes that it was clear that the debt could not have been proved under the 51st section. He then proceeds: "Is this, then, a debt payable on a *contingency*, under the 56th section? The contract on which the shareholder's obligation is founded, is not to pay a certain fixed sum upon a future contingency, but such sum or sums as may be required from himself and all the other shareholders from time to time, not exceeding a certain sum, and regulated by the wants of the company. At the time of the bankruptcy it was uncertain what the sum would be which the defendant would be called on to pay, and no certain debt was then contracted. But, in order to bring a case within the 56th section, the bankrupt must have contracted a certain debt before the bankruptcy, payable after it on a contingency."

The subsequent case of the *General Discount Co. vs. Stokes*, 17 *C. B.*, (*N. S.*) 765, was also for calls on shares of stock, and there it was held, as in the preceding case, and for the same reasons, that as the calls were not made before the bankruptcy of the defendant, his discharge formed no bar to the plaintiff's right to recover. And so in the more recent case of *Hastie, L. R.*, 7 *Eq.*, 2, before Lord ROMILY, M. R. In that case a shareholder in a company became bankrupt, and obtained his discharge. Afterwards the company was wound up voluntarily. The assignee in bankruptcy repudiated the shares, and they remained in the name of the bankrupt on the registry of the company. At the time of the bankruptcy no calls were due, and no attempt was made to prove for future calls in the bankruptcy proceedings, nor was there anything to show that they were capable of valuation at the date of the bankruptcy of the defendant. And such being the case, it was held that the bankrupt remained liable to the future calls, and therefore should be retained on the list of contributories, in the liquidation of the affairs of the company. The question in that case mainly depended upon the construction of section 154 of the Bankruptcy Act of 1861; but Lord ROMILY, in the course of his opinion, showed that the provisions of that section were not essentially different from the provisions found in the former bankrupt laws, and the construction of those former provisions were, therefore, applicable and controlling. He said, "It is quite settled by *South Staffordshire R. Co. vs. Burnside*, 5 *Exch.*, 129, and *General Discount Co. vs. Stokes, C. B.*, (*N. S.*) 765, that under the prior bankruptcy acts, future calls were not provable either as a debt payable *in futuro*, or as a debt due on a contingency." Upon appeal, this decision of the Master of the Rolls was affirmed, upon a full review of the authorities. *L. R.*, 4 *Ch. App.*, 274.

Many other cases, in support of the same principle, could be readily cited, but we deem it unnecessary. We are of opinion, both upon reason and authority, that the call sued for was not a provable claim, or any part of a provable claim, in the bankruptcy proceedings, and therefore the discharge pleaded forms no bar to the plaintiff's right to recover. The demurrer to the· plea of discharge should have been sustained, and we shall therefore reverse the judgment and remand the cause for a new trial.

*Judgment reversed, and*
*cause remanded for new trial.*

