In the Matter of the Assignment of JOHN REA ; ELIZA-RETH REA, Claimant and Appellee, v. E. S. JAFFRAY & Co., Objectors and Appellants.

1.   **Evidence**: DEEDS: PUBLIC RECORDS.   The official record of a conveyance is competent evidence of the fact of such transfer, where it is shown that the original instrument was never in the possession, nor under the control, of the person seeking to establish such fact.

2.   ——: FRAUD : HUSBAND AND WIFE : CROSS-EXAMINATION.   In an action involving the validity of the claim of a wife against the insolvent estate of her husband, the latter having testified, under examination in behalf of the creditors, that a false property statement sent to his creditors, from which the indebtedness to his wife was omitted, was made "upon the advice of a friend," *held*, that it was proper to show by the husband on cross-examination who was the friend referred to, and when, to his best knowledge, was the first time that the sending of such false statements was known to his wife.

3. ———— : ———— : ————. In such an action it is competent for the wife to prove by the husband the fact of his indebtedness to her, the history of the transaction wherein such indebtedness arose, the nature of the contract between them, and the reason why a note received from the husband had been antedated.

4. ———— : ———— : ————. Proof of a discrepancy between the price for which the husband's property sold at an assignee's sale, and the value thereof as represented by the husband to his creditors, is not competent as proof of the fraudulent character of the claim of the wife in such action.

5. General Assignment for the Benefit of Creditors: SURE-TIES ENTITLED TO PROTECTION OUT OF TRUST FUND. One standing in the relation of surety for an insolvent, who has made a general assignment for the benefit of creditors, is a creditor within the meaning of the provisions of chapter 7 of title 14 of the Code of 1873, and is entitled to file proof of such claim against the estate of the insolvent, whether the common creditor has asserted any claim against such estate or not, and to have a distributive share of the proceeds of the estate applied to the debt upon which he is thus bound.

*Appeal from Jasper District Court.*—Hon. D. Ryan, Judge.

SATURDAY, FEBRUARY 7, 1891.

On February 14, 1889, Elizabeth Rea filed her claim against the estate of John Rea, claiming for money loaned January 1, 1881, fifteen hundred dollars, and for money loaned February 10, 1888, two thousand dollars, with interest at ten per cent. on said sums, amounting to five hundred dollars; also, February 1, 1889, to payment of C. Griebeling's note, four hundred and seventy dollars,—making in all forty-four hundred and seventy dollars. She attaches two notes executed by John Rea to her for the money loaned, and the note of John Rea & Co. to C. Griebeling, and states as to the latter, that she and John Rea composed the firm of John Rea & Co.; that said note to Griebeling was for a firm debt; that the partnership was dissolved January 28, 1886, John Rea agreeing to pay the debts of the firm; and that, he failing to pay said note, she

was compelled to do so, less certain payments previously made thereon. On April 15, 1889, Mrs. Rea filed a second claim, which is a reassertion of the former claim for the fifteen hundred dollars and the two thousand dollars and interest. She states as the grounds for said claims that she and John Rea are personally bound upon a certain promissory note, dated February 10, 1888, for two thousand dollars, with ten-per-cent. interest, to the First National Bank of Newton, Iowa; that they are also so bound upon a note, dated January 1, 1881, for fifteen hundred dollars, with ten-per-cent. interest, made to Jasper County Bank, no part of the principal of which has been paid by either party; that both of said notes are secured by real-estate mortgage upon her separate property; that the amount derived from said notes went into the private business and to the sole use of John Rea, and that no other than her property is pledged as security; that she is informed and believes that said fifteen-hundred-dollar note is now the property of John L. Swift, a non-resident of the state, whose address and whereabouts are unknown to her; and that he has failed to file a claim before the assignee. She states that these claims are identical with the two notes set out in her former claim. E. S. Jaffray & Co., having a claim for eleven hundred and forty dollars and ninety cents, which is not disputed, filed certain objections and exceptions to the claim of Elizabeth Rea, upon the hearing of which judgment was entered, overruling said objections and exceptions and establishing the appellee's claim. From this judgment the objectors, E. S. Jaffray & Co., appeal, assigning as errors certain rulings of the court in admitting and rejecting testimony, and in allowing and establishing the claim of Elizabeth Rea.—*Modified and affirmed.*

*Winslow & Varnum*, for appellants.

*E. J. Salmon* and *Alanson Clark*, for appellee.

GIVEN, J.—I.   Upon the trial the records from the recorder's office, of the deeds showing the chain of title to Mrs. Rea in the mortgaged lands, and of the mortgages made to the banks, were admitted in evidence over the appellants' objection that they were secondary.   Mrs. Rea testified quite positively and satisfactorily that she never had any of the deeds in her possession or control, except the one from her immediate grantor, and that it was lost.   Her testimony as to the deeds was sufficient to admit the records thereof in evidence.   As to the mortgages, her testimony is less satisfactory, and shows an absence of knowledge or want of memory as to the whereabouts of the mortgages.   Mrs. Rea admits that she is short of ·memory, and her statements are so confused and contradictory as to leave it uncertain whether· either of the mortgages was then in her possession or· control.   Mr. Lyday, president of the First National Bank, produced the note and mortgage to that bank, and stated that it had been in the possession of the· bank ever since its acknowledgment.   The confusion in Mrs. Rea's testimony may be accounted for by the fact. that a second mortgage was given to the First National Banx as a renewal or correction of a former one.   The· records seem to. have been offered subject to objection, and this testimony afterwards taken.   The testimony of Mr. Lyday shows that the mortgage to the First. National Bank was not in the possession of the claimant ; and, hence, the record was properly admitted.   As the production of the mortgage put it within the power of either party to offer it in lieu of the record, there was. no prejudicial error in allowing the record to remain in evidence, in the absence of such· an offer,   It appears. that the mortgage to the Jasper County Bank, held by Swift, was unsatisfied, and would not, therefore, be in the possession of claimant.   Taking that fact in connection with her statements, we think the court might properly hold it as appearing that that mortgage did not belong to, and was not in the control of, the· claimant.

1. EVIDENCE: deeds: public records.

II.   We do not discover any error in the rulings of
the court in admitting testimony over the objections of
appellant.   The appellant called John Rea,
*2. ——: fraud: husband and wife: cross-examination.*   the insolvent, and proved by him that he
did, for the purpose of obtaining credit,
send a property statement to the appellant, in which he
omitted to state any indebtedness to his wife, the
claimant herein.   He admitted that the statement was
false, and answered in chief that he made it upon the
advice of a friend.   On cross-examination the appellee
was permitted to ask upon whose advice.   It was cer-
tainly permissible for the appellee to rebut any pre-
sumption that might arise from the statement that she
was the adviser; and, while this might have been done
by a more direct question, it was no prejudice to the
appellant that, in thus showing that she was not con-
spiring in the fraud charged against her, the name of
his adviser was given.   The appellee, having called
John Rea, was permitted to ask: "When, to your
best knowledge, was the first time your wife knew of
any such statements you have sent out or made?"   The
appellant contends that this was calling for a mere
opinion.   It was certainly proper for the appellee to
show any fact that would tend to disprove the charge
that she had participated in the fraud of John Rea in
sending out the fraudulent statements; and this ques-
tion called for such a fact,—the time she first knew of
the false statements being sent.   Numerous other objec-
tions made by the appellant during the examination of
John Rea were overruled that need not be noticed in
detail.

III.   John Rea was called for the purpose of estab-
lishing the appellee's claim; and it was certainly
competent for him to say whether he had
*3. ——: ——: ——.*   borrowed money from his wife.   If he had
answered that he had not, that would have been the end of
inquiry; but, answering that he did, it was for further
examination to develop the transaction, and see whether
it constituted a borrowing of money.   Having stated
that he gave her his note as against the indebtedness.

to the Jasper County Bank, and that the note had been dated back, it was competent for him to state that the reason for dating it back was to make it correspond with the date to which he had paid the interest to the bank. Conversations between the appellee and her husband, tending to show the contracts under which the claimed indebtedness existed, were competent.

IV. On the cross-examination of John Rea, the appellant was asked what the stock of goods brought at the assignee's sale. The purpose of this inquiry was to show fraud upon the part of John Rea in making the property statement that he did to the appellant. There is no question made but that his statement was false and fraudulent. Other reasons why there was no prejudicial error in sustaining the appellee's objection to the question are that such sales are seldom made for the real value of the property, and that the stock had been on sale for a reasonable time between the making of the statement and the sale by the assignee.

*4. —:—:—.*

The appellant asked Mr. Lyday, on cross-examination, what the two-thousand-dollar note was given for, to which the appellee objected as not cross-examination. It is questionable whether it was strictly proper cross-examination; but as the appellant afterwards called Mr. Lyday, and he stated fully for what the note was given, appellant was not prejudiced by the ruling.

V. Following the order of the discussion, our next inquiry is whether the appellee is shown to be a creditor of the estate, within the meaning of chapter 7, title 14, of the Code, relating to "assignments for creditors." The appellee's claim consists of three items,—one of fifteen hundred dollars, one of two thousand dollars, and one of four hundred and seventy dollars,—with interest on each. The appellee and her husband, John Rea, contracted a copartnership under the firm-name of John Rea & Co., January 7, 1881, which continued until February 1, 1886, when the appellee

*5. GENERAL assignment for the benefit of creditors: sureties entitled to protection out of trust fund.*

retired, John Rea assuming the indebtedness of the firm, and a Mr. Vaughan becoming a partner with John Rea under the firm-name of Rea & Vaughan, which continued for about two years, when Vaughan retired, John Rea continuing the business in his own name. John and Elizabeth Rea executed their joint mortgage upon her separate real estate to the Ætna Life Insurance Company for a loan of fifteen hundred dollars, which went into the business of John Rea, and which debt became due January 1, 1881. January 1, 1881, they executed their joint note, and a mortgage upon the same real estate, to the Jasper County Bank, for a loan of fifteen hundred dollars, the proceeds of which were applied in satisfaction of the debt to the Ætna Insurance Company. February 15, 1889, they executed their note for two thousand dollars to the First National Bank of Newton, Iowa, and a mortgage upon the same real estate to secure the same, this mortgage being given to correct a misdescription in a mortgage executed February 10, 1888, to secure the same debt. The proceeds of this loan went into the business of John Rea & Co. February 20, 1882, John Rea & Co. executed a note to C. Griebeling for four hundred dollars, which remained unpaid at the time of the dissolution of the partnership of John Rea & Co., except as to certain credits thereon, which note the appellee has since paid in full by the execution of her own individual note to said Griebeling. The note for fifteen hundred dollars executed to the Jasper County Bank is now owned by John L. Swift, a non-resident of the state. Mr. Swift has not filed any claim thereon with the assignee. The note for two thousand dollars to the First National Bank of Newton has been presented by that bank as a claim against the estate. Under date of January 1, 1887, John Rea executed his note to appellee for fifteen hundred dollars, and under date of February 10, 1888, another for two thousand dollars, each with ten-per-cent. interest. These notes were not executed at the time of their dates, but shortly before the making of the general

assignment. They were executed on a basis of the liability of Mrs. Rea and her separate property on the notes held by Mr. Swift and the First National Bank. We do not think that these notes change the relations of the parties, but that the rights of the plaintiff must be determined upon the facts as they exist independent of the execution of these notes. Had the appellee paid the debts on account of which they were given, it would be different.

The appellant contends that the appellee is not a creditor of the estate; that there is no debt due, or to become due, to her; that each item of her claim is for a mere contingent liability; that the relation of debtor and creditor does not exist; and that she is not, therefore, entitled to have her claim allowed under the statute. The assignment is for the benefit of creditors, and the distribution of the estate is to the creditors. "A creditor is he who has a right to require fulfillment of an obligation or contract" (Bouvier); "one who gives credit in business matters" (Webster). As to the Griebeling note the appellee is unquestionably a creditor of the estate. That was a note of John Rea & Co., and, by their agreement of dissolution, which was a sufficient consideration, John Rea assumed and agreed to pay that debt. By that agreement, as between them, he made the debt his own, though she remained bound to the payee as before. By reason of Mr. Rea's failure to pay the debt, the appellee, in performance of her obligation to the payee, paid the note. It seems to us very clear that thereby John Rea became indebted to the appellee in the sum paid in satisfaction of that note.

We may be in error in saying that the fifteen hundred dollars went into the business of John Rea. There is evidently some confusion as to dates in the abstract, but it is immaterial whether that amount went into his business or the business of John Rea & Co.; for, if the latter, then, by his agreement to pay the debts of the firm, he made it, as between him and the appellee, his personal obligation. The debt of two

thousand dollars was a contract for money that went into the business of the firm. Whether these were originally the personal debts of John Rea, or made so by his agreement to pay the debts of the firm, Mrs. Rea and her separate property are liable therefor.

The contention is that her liability is only contingent; that she may never have to pay these debts; and, therefore, that the relation of debtor and creditor does not exist. As to the fifteen hundred dollars, the holder makes no demand for a distributive share in the estate, and is content to pursue the separate property of Mrs. Rea, who in equity, at least as between her and the estate, is but a mere surety. She is a creditor, because she "has a right to require the fulfillment of an obligation or contract," because she gave "credit in business matters." It would, in our opinion, do violence to the language and manifest purpose of the statute to say that one who was personally liable as surety, or whose separate property stood pledged for the debt of him who had made assignment for the benefit of all his creditors, could not be heard to demand that the proper distributive share should be applied to the debts for which he or his property were thus bound. That the appellee did pay the debt to Griebeling, and that she and her separate property are bound for the payment of the other debts as stated, is not questioned in the testimony, and we have no doubt of her right to be protected as a creditor, in the distribution of the assets of the estate, by receiving to herself the share that is due to her on account of the payment of the Griebeling note, and requiring that the proper distributive share be applied towards the satisfaction of the fifteen hundred dollars and the two thousand dollars indebtedness.

The judgment, as shown in the abstract, overrules the appellant's objections, and establishes appellee's claim in the sum of forty-five hundred and seventy dollars and accruing interest. This is the full amount claimed, and was probably allowed upon the basis of the Griebeling note and the two notes executed by John Rea to the appellee. As to the Griebeling note,

the appellee is entitled to be allowed the full amount paid by her thereon, with interest, as called for in the note ; but as to the other two notes, she not having paid the same, the judgment of the court should ascertain the amount thereof, and order the assignee to pay to the holders the distributive share to which they would be entitled, the same as if they each had preferred the claim for allowance. The appellee's interest in said claims is such as to entitle her to present them for allowance, as she has done in this application. Some question is made that the second claim filed by appellee was too late to be entitled to consideration ; but we have seen that it was but a mere restatement of the basis of the former claim, and was not the filing of a new or additional claim.

The judgment of the district court will be modified and affirmed in conformity with this opinion. MODIFIED AND AFFIRMED.