### RAGSDALE v. THE WINNSBORO BANK.

1. CREDITOR AND DEBTOR—RELEASE—ASSIGNMENT—PRINCIPAL AND SURETY—REV. STAT., 2311.—A creditor releasing a debtor in accordance with the terms of an assignment, executed under Rev. Stat., 2311, does not thereby release the surety, unless it so affirmatively appear on the face of the release.

2. IBID.—IBID.—IBID.—IBID.— CASE · DISTINGUISHED. — Where principal and sureties both make assignments for benefit of creditors at same time, the creditor holding endorsed claims is entitled to receive a dividend from the assigned estates of the sureties upon the full amount due on the face of such claim, regardless of the amount which may be received from the estate of the principal debtor. *Wheat* v. *Dingle*, 32 S. C., 473, *distinguished*.

3. IBID.—ASSIGNMENT.—PRINCIPAL AND SURETY.—Debts arising after an assignment is made is not provable against the assigned estate. So the assignee for a surety who is compelled to pay a dividend on a suretyship debt, after the assignment of the principal, cannot prove such claim against the assignee of the principal.

Before BENET, J., Winnsboro, June, 1895.  Modified.

Action by Glenn W. Ragsdale, as assignee for the benefit of the creditors of Alexander Williford, Quay D. Williford, and Wade H. Williford, against the Winnsboro National Bank and all the other creditors of the three assignors, to have the Court to settle certain questions as to the distribution of the assigned estates. From the Circuit decree, the defendants, the Winnsboro National Bank, the People's Bank, assignees of the Bank of Chester, the Carolina Savings Bank, the Savings and Investment Company, Mary M. Watson, Anna Watson, and Nettie T. Trainer, appeal.

*Messrs. A. S. Douglass, J. E. McDonald*, and *Hemphill & Hemphill*, for appellants.

*Messrs. Ragsdale & Ragsdale*, for plaintiffs, contra.

*Messrs. Jas. W. Hanahan* and *W. D. Douglass*, for defendant creditors, contra.

Feb. 21, 1896. The opinion of the Court was delivered by

Mr. Justice Gary. This action was commenced in the Court of Common Pleas for Fairfield County by the plaintiff, as assignee, for the benefit of the creditors of Alexander Williford, Quay D. Williford, and Wade H. Williford, against all the creditors of the said assignors, and the assignors, as defendants, in July, 1894, by the service of the summons and complaint on defendants residing in this State, and by the service of the summons on non-resident defendants by publication.

The decree of his Honor, the presiding Judge, contains the following statement of the facts in the case: On the 18th of January, 1894, one A. Williford, the father, and Quay D. Williford and Wade H. Williford, his two sons, each by his separate act, did execute and deliver his certain deed of assignment, whereby each conveys to the plaintiff all his property, both real and personal, in trust for the benefit of his creditors, upon conditions set forth in the deed. The condition in each of the deeds was, substantially, to the effect, that all such creditors as should, within four months from the date of the deeds, present their claims duly verified, and accept in writing the terms of the assignment, and execute a release, and file the same with the assignee, should first participate in the distribution of the assigned estates. The assignors had all been engaged in business, not jointly, however, but each on his own account. The three deeds of assignment were executed and delivered on the same day, "within one hour," in the same office, and the same assignee chosen for all three estates. No question is made as to the good faith of the assignors, and no efforts made to annul the assignments. At the time of the assignment, each of the assignors was individually in debt to a large amount. They had also, by interchangeably endorsing, become liable on each other's notes as sureties or endorsers, two of them endorsing the paper of the third. Within the time limited—four months—verified claims, acceptances in writing, and releases were duly filed with

the assignee by all, or nearly all, of the creditors of the
three assignors. It is admitted that the claims were pro-
perly proved and all the releases duly executed. The plain-
tiff, assignee, soon found that the releasing creditors did
not all occupy the same ground; that there were, indeed,
three classes of creditors: first, ordinary mercantile credit-
ors, who filed absolute unconditionol releases; second, cred-
itors holding the notes of one of the assignors, endorsed by
the other assignors, and who filed absolute, unconditional
releases; and, third, creditors holding similar notes, who
filed what they claimed to be conditional releases. There
was still a fourth class of creditors, namely, the banks, that
held certain collateral securities. The conflicting interests
of these various classes of creditors induced the assignee to
institute this suit, and submit to the Court the solution of
the intricate issues involved. After the usual allegations
as to the assignments, the conditions of the assignments,
and the debts and creditors of the respective assignors, and
the filing of acceptances and releases by the creditors—
nearly all of them—the complaint of the assignee alleges,
in the ninth paragraph: "That in addition to the debts due
and owing by the plaintiff's said assignors as aforesaid, at
the time of their respective assignments, the said assignors
were liable as endorsers or sureties, the one for the other,
and many of the claims presented and proved before plain-
tiff, as assignee as aforesaid, are promissory notes executed
by one of the said assignors as principal, and by the other
of said assignors as endorsers or sureties, and the parties
holding such notes have presented and proved the same
against each of the assigned estates, and demand of the
plaintiff that he pay at once a *pro rata* out of each of the
assigned estates upon the full amount which is due upon
the face of such notes, without first applying as a credit
thereon such amount as may be received from the estate of
the principal debtor." Then, after alleging, in paragraph
ten, that he "is now ready to pay a dividend to the respect-
ive creditors," but that he "is embarrassed on account of

disagreement among the defendants who are creditors," and after, also, alleging, in paragraph eleven, that the Winnsboro National Bank and the People's Bank held divers collateral securities assigned to them by assignors prior to their general assignments, the plaintiff, assignee, submits to the judgment of the Court: First. Whether the claims presented against the estates of the several assignors, as endorsers *or* sureties, are in anywise affected by the releases of such claims, which have been given as aforesaid to the principal debtors? Secondly. Whether the parties who hold claims against the estates of the several assignors, as endorsers or sureties, should receive a dividend from the assigned estates of the said endorsors upon the full amount due upon the face of such claims, regardless of the amount which may be received from the estate of the principal debtor, or whether the assets of the principal debtor should be first applied as a credit upon such claims? Thirdly. Whether the amount which may be paid by the plaintiff, as assignee of the endorsers, becomes a debt due by the principal debtor which may participate in the distribution of his assigned estate. And the plaintiff prays for such other and further instructions, &c., and for an accounting as to the collateral securities.

The assignors and their numerous creditors were made defendants, and the answers were filed, raising issues already adverted to. The main issue arising out of the facts and pleadings in this cause is this: To what extent, if any, is a surety affected by the discharge of his principal? To put the question in a concrete form: When the Winnsboro National Bank—holding notes on which Alexander Williford appeared as maker, and Quay D. Williford and Wade H. Williford, his sons, appeared as sureties and endorsers—voluntarily executed a release under A. Williford's deed of assignment, whereby it forever discharged in full the claims on said notes against the said Alexander Williford, did it thereby relinquish its claims against the two sureties, and discharge them? Or may the bank present its claim in

full, and be paid its dividend not only out of the assigned estate of Alexander Williford, the principal, but also out of the assigned estates of Quay Williford and Wade Williford? The bank—and it represents a class of the creditors—alleges in its answer that "it is entitled to demand and receive, and does claim from plaintiff, a *pro rata* dividend upon the full amount due upon each of the aforementioned notes * * * out of each of the said assigned estates, until said claims are paid in full, or the assets of each of the estates when so applied shall be exhausted." This claim of the Winnsboro National Bank, and like claims of other creditors similarly situated, are resisted by the ordinary accepting and releasing creditors, on the ground, that the principal having been released and discharged, his sureties are thereby released and discharged, and the assigned estates of the sureties cannot be made to respond to such claims. The releasing clause in the release filed by the Winnsboro National Bank was as follows: "Know all men by these presents, that the said Winnsboro National Bank, of Winnsboro, S. C., hereby accepts the terms of said assignment, and in consideration of the premises, and of the amount due to the said bank under the said assignment, hereby releases and forever discharges in full the aforesaid claim against the said Alexander Williford." Similar releases were filed by the Carolina Savings Bank, and the Bank of Chester, and others. The releases were all under seal. Among the creditors holding notes signed by the three assignors were the People's Bank, Mrs. Mary M. Watson, Anna Watson, and Mrs. Nettie (Watson) Trainer. They also accepted in writing the terms of the three assignments, and in due time executed and filed releases under seal. It was admitted before the Circuit Judge that Quay Williford and Wade Williford signed the Trainer and Watson notes as sureties; and they are sureties on the People's Bank note. The releases executed by these creditors just named differ from those filed by the Winnsboro National Bank and others, in that they purport to be joint releases of all three

assignors in one instrument. The releasing clause in the release filed by the People's Bank, for example, reads as follows: "Now, know all men by these presents, that the said the People's Bank, in consideration of the premises and of the amount that may be due and paid to it under the several and respective assignments aforesaid, does hereby accept the terms of said deed of assignment, and does hereby release and forever discharge the aforesaid claim against the said A. Williford, as maker, and the said W. H. Williford and Q. D. Williford, as endorsers, of the note hereinbefore mentioned."

His Honor, Judge Benet, ordered, adjudged, and decreed, that the assignee, Glenn W. Ragsdale, Esq., do distribute the three aforementioned assigned estates in accordance with the views herein expressed, that is to say, that creditors, holders of notes, who released and discharged the maker shall not be paid dividends out of the assigned estates of the sureties or endorsers; and that with respect to creditors who hold collateral securities, they shall be paid their *pro rata* dividends regardless of the amounts they may have collected or may yet collect on said collaterals.

Numerous and lengthy exceptions were filed to said decree by the appellants; and the respondents served notice that they would ask this Court to sustain said decree upon additional grounds set forth in their notice.

These, however, will not be considered *seriatim*, as they raise practically but three questions: 1st. Whether his Honor erred in adjudging that the assignee should distribute the aforementioned estates, in such a manner, that creditors, holders of notes who released and discharged the maker, should not be paid dividends out of the assigned estates of the sureties or endorsers. 2d. If his Honor was in error in so deciding, and it should be held that the creditors not only have the right to a *pro rata* of the dividends from the estate of the maker, but also from the sureties or endorsers, then upon what basis should such dividends be distributed? Would the creditors be entitled to dividends

from the estates upon the amount of their demands due at
the time the assignments were made, or upon the amount
of their demands remaining unpaid after deducting pay-
ments thereon subsequent to said assignment?   The credi-
tors would not, of course, in either event, be allowed to re-
ceive in the aggregate more than the amount due upon
their claims.   3d. Has the assignee of the estate of the
surety or endorser the right to collect a dividend from the
assigned estate of the maker by reason of a payment made
to the creditor by said assignee?

The first question raised by the exceptions involves a
construction of the acceptances under the said assignments.
After carefully considering the said acceptances, this
Court is of the opinion that they were intended by
the creditors merely to release their claims against
the estate of the debtor mentioned in the particular accept-
ance.   That the release of the demands against the maker
was intended to be a personal release to such debtor and
was not intended to release his sureties or endorsers.

Amongst the preferences allowed by said statute is that
"to such creditors as may accept the terms of such assign-
ment and execute a release of their claim against the
debtor."   The statute simply provides for the release of the
claim against the *debtor*, and was not intended to interfere
with the rights of the accepting creditor against other per-
sons jointly liable with the maker.   This construction is
in harmony with the spirit of section 2311, Rev. Stat.,which
provides as follows: "A joint debtor may make a separate
composition with his creditor as prescribed in this section.
Such a composition shall discharge the debtor making it,
and him only.   The creditor must execute to the com-
pounding debtor a release of the indebtedness or other
instrument exonerating him therefrom. * * * An instru-
ment specified in this section shall not impair the creditor's
right of action against any other joint debtor, or his right
to take any other proceedings against the latter, unless an
intent to release or exonerate him appears affirmatively

upon the face thereof." There is another strong reason against the presumption that the release of the maker was a' release of the surety or endorser. When the assignments were delivered, those holding demands against the assignors became beneficial owners of the property assigned. *Winston* v. *Biggs*, 23 S. E. R., 316; *Brough's estate*, 71 Penn. St. Rep., 460; *People* v. *Remington*, *N. Y.* (reported in 8 L. R. A., 458); *Citizens' Bank* v. *Patterson*, 78 Ky., 291; *Adler* v. *Cloud*, 42 S. C., 272; *In re Bates*, 118 Ill., 524; *Brown, trustee*, v. *Mer. & Far. Bank*, 79 N. C., 244. To hold that the surety or endorser was discharged when the maker was released, would be to presume that the accepting creditors intended to surrender their. beneficial rights of property in the other assigned estates. This was not the intention of the accepting creditors under the arrangement made by the maker.

We will now consider the second question raised by the exceptions, which is as to the manner in which. the dividends from the assigned estates should be distributed.

2 This question has given rise to much discussion, and many authorities could be cited on either side, but in our judgment it has been practically settled by the decisions in our own State. The claims against the estates of the sureties or endorsers was only a *personal* obligation. It must also be remembered that a payment by the assignee of the maker's estate is to be regarded in the same manner as that by a *third* person, in so far as it affects the sureties or endorsers, and, therefore, would not come within the principle laid down in the case of *Wheat* v. *Dingle*, 32 S. C., 473, the syllabus of which is as follows: Where the lien creditors of the intestate receive part payments, after his death, from the proceeds of the property mortgaged and pledged, they are entitled to dividends, along with the unsecured creditors, out of the general assets, but only upon the amount of their demands remaining unpaid after such application, and not upon the amount due at the date of the intestate's death. The distinction to be observed in

the rule where the payments have been made from the estate of the assignor, or by third parties, is clearly pointed out by the case first mentioned, and the authorities therein cited. See, also, *Third National Bank of Detroit* v. *Haug*, *assignee*, Mich. (reported in L. R. A. vol. 11, page 327); also, *Assignment of Meyer*, Wis. (reported in L. R. A., vol. 11, page 841); and *Brough's estate*, 71 Penn. St. Rep., 460.

These cases show that the creditors were entitled to demand and receive from the assigned estates a *pro rata* dividend upon the full amount due upon their respective claims, out of each of the assigned estates, until the said claims should be paid in full, or the assets of said estates, when so applied, should be exhausted.

We next proceed to a consideration of the third question, which involves the right of the assignee of the estate of the surety or endorser to demand and collect from the assigned estate of the maker by reason of the payment to the creditor by said assignee of the surety or endorser. The rights of parties to claim under a deed of assignment depend upon the state of facts existing at the time of the making of the assignment. The sureties or endorsers were not creditors of the maker at the time he made his deed of assignment, and, therefore, they are not entitled to a *pro rata* dividend from the assigned estate of the maker of the notes. *Youngue* v. *Linton*, 6 Rich., 275; *Nettles* v. *Huggins*, 8 Rich., 273; *McCrady* v. *Jones*, 44 S. C., 406.

We understand that the exceptions to so much of his Honor's decree as decided that creditors who hold collateral securities should be paid their *pro rata* dividend regardless of the amounts they may have collected or may yet collect on said collaterals, has been abandoned. This Court, however, does not desire it to be understood that it assents to this rule of distribution.

It is the judgment of this Court, that the judgment of the Circuit Court be modified.