No. 1540.]

HILL, RECEIVER, v. GRAHAM, ASSIGNEE.

1. REMOVAL OF CAUSES—ASSIGNMENT FOR BENEFIT OF CREDITORS—CLAIMS AGAINST ASSIGNEES.

A claim filed, with an assignee for the benefit of creditors, against the insolvent estate and resisted by the assignee constitutes a proceeding in court under our statute. The claimant in such case is a plaintiff as the term is understood in the law. As the present statutes of the United States do not give to plaintiffs the right to remove causes from the state to the United States courts, a receiver of an insolvent national bank who filed a claim with an assignee was not entitled to remove the cause to the United States court.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—BANK STOCK.

An assignee for the benefit of creditors who takes by the assignment shares of the capital stock of an insolvent national bank, does not become a stockholder in the bank so as to be liable for an assessment on the stock.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—ASSETS.

An assignee for the benefit of creditors is not obligated to accept, but is bound to decline to accept assets which will prove onerous and a burden to the estate.

4. SAME—STOCK ASSESSMENT—INSOLVENT BANK.

An assessment made against a stockholder in an insolvent national bank after such stockholder had assigned his property for the benefit of his creditors is provable as a claim against the estate and is entitled to a distributive share of the assets in the hands of the assignee where the debts of the bank were contracted and the bank became insolvent prior to the assignment of the stockholder.

*Appeal from the District Court of Arapahoe County.*

Mr. JOHN T. BOTTOM and Mr. F. F. OLDHAM, for appellant.

Messrs. HARTZELL & STEELE, for appellee.

BISSELL, J., delivered the opinion of the court.

This is a controversy between the receiver of an insolvent national bank and an assignee of the estate of J. J. Riethmann who was its president, and of J. J. Riethmann & Co., a firm composed of the president and others.

The German National Bank was organized under the federal statutes and did business up to the 7th of June, 1894. On that date the bank was insolvent and closed its doors and was placed in the hands of a receiver by the federal authorities. It never resumed business and its affairs are being wound up under the direction of the comptroller of the currency. One thousand and fifty-seven shares of the capital stock of the bank stood in Riethmann's name on the books of the bank when it suspended. There was no change in the position of affairs until the 25th of October ensuing when Riethmann made an assignment under the state statute on behalf of himself and on behalf of the firm of which he was a member, conveying his personal and the firm property to the assignee for the payment of his individual and the firm creditors. The transaction was evidenced by two instruments but the same persons were assignees in both. These assignees accepted the trust and proceeded to wind up the estates and continued until there was a substitution of Graham who is the appellee in this court. Some months after the bank closed its doors, and probably when the affairs of the bank had become thoroughly understood by the comptroller that officer on the 16th day of January, 1895, levied an assessment on the stockholders of $100 a share, payable on or before the 20th day of the month. While the fact to be now referred to may be immaterial in the line of our conclusion, so much reliance has been placed on it that we feel

called on to express our views about it. It is stated that in the transfer executed by Riethmann the 1057 shares of bank stock was specified and the assignees when they filed their statutory report included them in the inventory. After the levy by the comptroller the receiver filed his claim of $105,700, with the assignees. It is not very clear whether he filed it against the individual estate alone, or whether it was filed as a claim against the individual and also against the partnership estate, or with the assignees generally claiming an interest in all the assets. This may become important during the continuance of this litigation, though for the purposes of this opinion otherwise than as we make a suggestion about it, it does not affect the question decided. Some months after the assignment and the levy, and after Graham had been appointed, he filed his exceptions to the claim. Under our statute this is the procedure prescribed and on the issues made by the claim and the exceptions, and any other pleadings relating to it, an issue is formed and the matter remains to be disposed of in the regular course of these statutory assignments. Under our act, they are substantially proceedings in court. Claims are filed and they are allowed or exceptions are taken, and the validity or invalidity of claims as between the assignees and claimants, or as between creditors, the payment of dividends and all other matters relating to the winding up of such estates are entirely under the control and direction of the court like any other litigation. When the exceptions were filed the receiver presented a petition to remove the cause to the federal court. Between the time the exceptions were filed and the motion made, the receiver had appeared at various times in person and by attorney and taken part in proceedings begun to remove one of the assignees and in some other steps which were rendered necessary by these interlocutory matters. The court denied the removal, the receiver filed a reply, a hearing was had, the exceptions sustained, the claim disallowed, and judgment was entered against the receiver who prosecutes this appeal.

Several matters are assigned as error. The receiver insists

the court erred in denying his petition to remove the cause to the federal court. The argument is predicated on the cases which hold that receivers are officers of the government, and have a right to bring all suits concerning the estate under their control in the federal courts. Without detriment to our ultimate position we may concede this position to be well taken. It is tolerably clear that the receiver could bring in the federal court any suit which involved the interests of the bank, or which was necessary to the winding up of its affairs. This concession, however, does not dispose of the question. As the statutes formerly stood, there would be no doubt about the right of the receiver to remove this proceeding. Under the act of 1875, the proper conditions existing, either plaintiff or defendant could remove any cause of which the federal court could take cognizance. That act was amended in 1887 and 1888, and the right to remove no longer inures to a plaintiff. The matter is concluded by the decisions of the supreme court of the United States. *Hanrick v. Hanrick*, 153 U. S. 192; *Fisk v. Henarie*, 142 U. S. 459; *Tennessee v. The Union & Planters' Bank*, 152 U. S. 454.

These adjudications leave open only the question whether the receiver was, in the sense in which the term is strictly and accurately applied, a plaintiff, and therefore bound by his selection of a forum. The initiation of the proceedings to enforce and collect this claim was the act of the receiver. It was begun by the filing of his claim with the assignees and its prosecution in the state tribunal. We attach no significance whatever to the general provision of the state statute which gives the court exclusive jurisdiction for the winding up of the estates of insolvents, because it has many times been held by the United States courts that cases of a similar character where particular courts were given exclusive jurisdiction, as in matters of probate, were yet and notwithstanding those statutes still removable if the right belonged to the plaintiff. Under our statute, when the claim was filed and exceptions were taken by the assignee and a reply was filed by the receiver, an issue was formed

which practically was the assertion of the claim on the one side and a denial of its validity on the other. The claim was not established by the simple levy of the assessment by the comptroller, nor was it at all determined by the transfer of the stock in the general deed of assignment. Under the issue the receiver was bound to prove his appointment, the action of the comptroller and the ownership of the stock. This renders it quite apparent that as the term is understood in the law the receiver was a plaintiff, and that his right to remove must be measured by his position. This principle was recognized in *Tullock v. Webster County et al.*, 40 Fed. Rep. 707; *Welles v. Stout*, 38 Fed. Rep. 67; *Kennedy v. Gibson*, 8 Wall. 498.

On principle as well as on authority it must be held that the receiver was a plaintiff and had no right to remove the cause. Whether he would have had a right to bring suit directly in the federal court against the assignees to enforce his claim and collect it out of the assets is a matter which we need not consider. He did not take this course but submitted himself to the jurisdiction of the state court, and on the rendition of an adverse judgment is bound unless he can successfully contest the validity of the judgment.

There is another question presented which is measurably incidental and about which perhaps it is not indispensable that we express an opinion. We regard it as involved and decide it. It will be remembered that at the time of the assignment Riethmann was the holder of 1057 shares of the capital stock as proved by the bank books. These shares were included in the inventory annexed to Riethmann's assignment. When the assignees filed their inventory in court in compliance with the statute they were mentioned. Though not otherwise than in these particulars was anything done by either the assignor or assignees with reference to the transfer of this particular stock nor was it otherwise accepted by the assignees. These circumstances and these facts are used as the basis of an argument to the point that the assignees became by the transfer stockholders and therefore liable to pay

the assessment. The argument was originally used to support one proposition; that all the assets that passed to the assignees were by reason of this acceptance subject to the payment of the assessment to the exclusion of the claims of all other creditors. We do not regard this as tenable because we are quite of the opinion that the liability of the assignees to pay this assessment or any part of it is not to be determined or measured by their acts with reference to it. Whether there would be circumstances under which an assigned estate would be bound by assessments we do not determine. Whether if the assignee had seen fit to treat the stock as part of the estate the estate would be holden we do not decide. It is quite clear that the assignees took no direct action as stockholders, they accepted the deed and filed their reports. The matter of the acceptance and the matter of the liability, as we look at it, cannot be controlled or determined by these considerations. If the bank had been a going concern and the assignees had attended meetings of the corporate body and they had participated in corporate action, the result might have been a stock liability. As a general proposition this liability cannot attach without direct, effective and designed acts by the trustees having for their purpose an intention to assert title to the stock and derive benefits from it. The cases agree on this proposition. *Gray v. Coffin et al.*, 9 Cush. 192; *American File Co. v. Garrett*, 110 U. S. 288.

But there is another consideration which must determine this matter of a stock liability adversely to the appellant's contention. As a general rule whenever an estate passes to an assignee for distribution among creditors, the assignee is not obligated, more than that, he is bound to decline, to accept assets which will prove onerous to the estate and a burden rather than an asset. The discretion with respect to assets of this character is not committed wholly to the assignee for it has been adjudged by the supreme court of the United States that if the assignee should attempt to accept assets which would prove a burden rather than an advantage, the creditors would not be without remedy and they might

apply to the court having original jurisdiction in the matter to compel him to take the course which was for the best interests of the creditors generally. *Glenny v. Langdon,* 98 U. S. 20; *American File Co. v. Garrett, supra; Glenn, Trustee, v. Howard and Savage,* 65 Md. 40; *Sayre v. Glenn,* 87 Ala. 631; *Ragsdale v. Winnsboro Nat. Bank,* 23 S. E. Rep. 947.

The antecedent discussion disposes of all the questions which are in their nature interlocutory, and leaves only the one question which is decisive of the appeal. The case has been a long time before the court; it has been twice argued and twice briefed. On the original argument the contention of the government was that the claim filed by the receiver was to be treated as a preferred one, and that the assignee was bound to pay it in its entirety providing he realized from the assigned property enough to pay the amount of it. On the original hearing we disputed this proposition and reached a conclusion adverse to the appellant. This position is supported by a recent case involving a similar question. *In re Beard's Estate,* 50 Pac. Rep. 226. On the subsequent hearing however, counsel for the government assumed a very different position. It was admitted on the argument that the stock never came into the possession of the assignee but was in the possession of another and held as collateral for a loan made prior to the assignment and perhaps prior to the failure of the bank so that the question last discussed was virtually eliminated from the case. Counsel admitted that the claim filed by the receiver was not a claim entitled to a preference in the distribution of the assets at all, but was simply a claim, demand, or liability which the receiver might file with the assignee, have allowed among the other claims and demands against the assigned estate, and thereby become entitled to participate with the other creditors in the distribution. This position was supported by argument based on the cases, federal and state, which have discussed the question of the nature, character, and extent of this stock liability, and our own state statutes concerning assignments as well as similar enactments in other states under which these claims

have been held provable before an assignee and entitled to dividends accordingly. On these bases the case has been re-examined. This entirely distinct position presented and argued for the first time on the rehearing has led us to a different conclusion and to modify the original opinion.

The question of the nature and character of this stock liability has been the subject of considerable judicial examination. It has been considered by the federal courts when they have construed the congressional act which provides for it and in many states where the courts have interpreted statutes which have been passed with reference to the liability of stockholders of manufacturing and other corporations. The courts almost universally agree in their conclusions although they are not in entire unison in the reasoning by which the opinions are supported. When we come to the examination of a federal statute we unhesitatingly follow the supreme court of the United States in its construction providing this construction is unaffected by state legislation. In determining what this stock liability is, the courts all agree that it is of a contractual character and they nearly all concede that the liability arises at the time the corporation contracts the debt when the liability of the stockholder is sought to be enforced in order to discharge it. A good many of the cases put it as primary liability; others as a contract entered into at the time the debt is incurred either by the sale of goods or in any other commercial transaction; others say, it is precisely the same as though, when the debt was contracted, the stockholder had executed a bond to pay the debt in case the bank should default. The supreme court said in the *Irons* case which will be cited: "The individual liability of the stockholders is an essential element in the contract by which the stockholders become members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt, and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation. There is nothing in the statute to in-

dicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholders." The leading case on this question is *Corning v. McCollough*, and all the later authorities adopt the rule which that case expresses. We may therefore take it as thoroughly well established that this stock liability is one of contract; that it has its inception at the time the insolvent corporation contracts the debts; that an assessment may be levied or an action may be brought and payment coerced out of the fund resulting from the levy or in the suit to enforce the stock liability. There is no apparent difference in the two cases. *Hawthorne v. Calef*, 2 Wall. 10; *Richmond v. Irons*, 121 U. S. 27; *Stuart v. Hayden*, 18 Supreme Court Rep. 274; *Corning v. McCullough*, 1 Comstock, 47; *Brown v. Hitchcock*, 36 Ohio St. 667; *Norris v. Wrenschall*, 34 Md. 492; *Fuller v. Ledden*, 87 Ill. 310; *Gebhard* v. *Eastman,* 7 Minn. 56; *Mokelumne Hill Canal & Mining Co. v. Woodbury*, 14 Cal. 265; *Erickson* v. *Nesmith et al.*, 46 N. H. 371; *Witters v. Sowles*, 32 Fed. Rep. 130.

Starting with this proposition it is impossible to escape the conclusion. Our statute by which this case is controlled was passed in 1885. It is similar in its terms to the Illinois statute, and it certainly warrants a similar construction. We nowhere find in that act a definition of the word "claims" by which what is provable before the assignee is almost universally denominated in the act. Everywhere in it the things provable are called claims or demands, in one case, liabilities, but nowhere except as to those not yet due are they called debts. Whenever the words claims, demands and liabilities have been the subject of judicial construction, it has always been agreed that they have a broader significance than the word debts. The statute evidently intended to provide that all claims existing against the assignor at the time of his conveyance should be provable before the assignee, and share in the dividends. Since as we have already seen and determined, the stock liability was created at the time that the bank incurred the debts which are

represented by this claim filed by the receiver, it must follow that the demand existed prior to the time of the transfer. The levy of the assessment by the comptroller was simply a computation and the commercial expression of the result of the examination by the government, and the determination of the exact condition of the affairs of the bank. It sufficiently appears from the record that the bank was insolvent when it closed its doors. If that is true, then there was a stock liability antecedently contracted when the bank incurred the debts which were unpaid, and which forced it into insolvency, and this was prior to the time the assignment was executed. Under these circumstances we cannot but regard this assessment as a claim or a demand owed by the stockholder Riethmann at the time the bank became insolvent, as well as at the time the bank contracted the debts. It is possible that had our statute used the legal term debt and no other, we might not have been able to reach this conclusion, but since it uses the words claims, demands and liabilities exclusively, in determining what may be presented, what may be proved, and what may share in the dividends, we must conclude that a claim of this description, thus maturing and existing prior to the time the deed was executed, is entitled to a distributive share in the estate. This doctrine has been recognized in many cases, and claims of a similar description have been held provable before assignees. *Reading Iron Works — Sweatman's Appeal,* 150 Pa. St. 369; *Estate of Jamison & Co.,* 163 Pa. St. 143; *Suppiger v. Gruaz,* 137 Ill. 216; *Parker v. Hull,* 46 Ill. App. 472; *Smith v. Goodman,* 149 Ill. 75; *Pittsburg & Steubenville R. R. Co.'s Appeal,* 2 Grant's Cases, 151; *Matter of Ives,* 25 Abbotts's New Cases, 63; *Dent v. Matteson,* 73 N. W. Rep. 416; *Hoyle v. Scudder,* 32 Mo. App. 372; *In re Assignment of Rea,* 82 Ia. 231; *Farwell v. Myers,* 59 Mich. 179.

We have therefore decided that this claim is provable before the assignee. The record, however, is not in such shape as to enable us to determine the limits within which the receiver is entitled to dividends. It is of course true that so

far as the individual estate of J. J. Riethmann is concerned, he having been the stockholder, the receiver is entitled with all the rest of Riethmann's creditors to share in the distribution of whatever individual estate passed to the assignee by Riethmann's conveyance. As we understand it, the same rule applies to the assigned estate of J. J. Riethmann & Co. So far as we are advised by the record this was a partnership composed of Riethmann and others and the transfer executed by the firm conveyed the firm property to the assignee in trust, first, for the payment of the firm's debt, and next for the payment of Riethmann's individual debts. How far and to what extent the receiver may be entitled to share in the distribution of the assets of the partnership we are not prepared to decide. That can only be ascertained after a hearing in the lower court, by which the character, amount, and nature of the two estates is determined and settled and wherein also the partnership liabilities and individual debts are ascertained. Nothing contained in this case must be taken as a determination of the extent of the distributive share to which the receiver is entitled in the winding up of the partnership estate. This question brings us into a wholly different domain, requires the settlement of entirely different matters and the query can only be answered when the facts to which the law must be applied are exhibited in the record. The present case is simply an appeal from the judgment which affirmed the disallowance of the claim by the assignee. No other question is before us. We have only decided that the claim filed by the receiver was one which was provable before the assignee and the receiver is entitled to whatsoever the law gives him.

The foregoing discussion disposes of all the questions which we regard as legitimately presented and as the result of it the judgment affirming the disallowance of the claim must be reversed.

*Reversed.*