[No. 4046]

GRAHAM, ASSIGNEE OF REITHMANN AND REITHMANN & CO. V. PLATT, RECEIVER OF THE GERMAN NATIONAL BANK OF DENVER.

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—BANK STOCK OF INSOLVENT BANK—DUTY AND LIABILITY OF ASSIGNEE.

An assignee for the benefit of creditors is not bound to accept, but is bound to decline to accept, assets which will prove onerous and a burden to the estate, and where an assignment for the benefit of creditors mentioned amongst the assets of the assignor certain bank stock of an insolvent bank the assignee does not thereby become a stockholder of the bank subject to the statutory liability.

2. SAME—LIABILITY OF STOCKHOLDERS—CLAIM AGAINST ASSIGNEE.

Where a national bank becomes insolvent and closes its doors for business a stockholder at once becomes the debtor of the creditors of the bank in such sum as may be assessed by the comptroller to the extent of the par value of his stock, and he cannot avoid such liability by a transfer of his stock. And where after a national bank became insolvent a stockholder made an assignment for the benefit of his creditors the sum afterwards assessed against him by the comptroller under the statute was a valid claim against the estate of the stockholder and when filed by the receiver of the bank with the assignee and proven it must be allowed.

*Error to the District Court of Arapahoe County.*

Messrs. HARTZELL & STEELE for plaintiff in error.

Mr. A. B. SEAMAN, Mr. JOHN T. BOTTOM and Mr. H. S. SILVERSTEIN for defendant in error.

Mr. JUSTICE STEELE delivered the opinion of the court.

On June 7, 1894, The German National Bank ceased to do business and closed its doors. At the time 1,057 shares of stock stood in the name of John J. Reithmann. On July 6, 1894, a receiver was appointed. On October 25, 1894, John J. Reithmann,

for himself and for J.J.Reithmann & Company, executed a general deed of assignment for the benefit of his creditors to certain assignees. On October 29, 1894, the then assignees filed their inventory, mentioning the 1,057 shares of stock. On January 16, 1895, the comptroller of the currency levied an assessment upon the stockholders of The German National Bank of one hundred dollars on each share, payable on or before the 20th day of January, 1895. Within the time prescribed by law, the then receiver of the German National Bank filed his claim with the assignees of the estates of Reithmann in the sum of $105,700. In February, 1896, David B. Graham, the plaintiff in error, qualified and entered upon the duties of his office as assignee in place of former assignees; and in September, 1896, filed his exceptions to the claim. Afterwards, the receiver of the bank filed his answer or reply to the exceptions; and on December 21, 1896, the court sustained the exceptions of the assignee and disallowed the claim, entering judgment against the receiver for costs. Thereupon the receiver appealed to the court of appeals, and that court reversed the judgment. On January 21, 1899, the district court allowed the claim of the receiver against the estates in the hands of the assignee, in the sum of $105,700. The assignee brings the case here by writ of error, asking for a reversal of the said judgment, for errors assigned in allowing the claim, upon the ground that the liability of John J. Reithmann as a stockholder of the German National Bank was not a provable debt against the assigned estate.

All questions presented to the district court, except one, have been abandoned by the respective parties; and the sole question for our consideration is whether or not the statutory liability of Reithmann as a shareholder of the German National Bank is provable against his assigned estate. The assignee of Reithmann, the plaintiff in error, contends that at the time of the assignment of Reithmann, the receiver of the bank, the defendant in error, was not a creditor of Reithmann because at that time no assess-

ment had been made by the comptroller of the currency, and that no claim arising by virtue of any subsequent assessment could so alter the situation of the creditors of Reithmann as to permit the same to be properly allowed as a claim against the assigned estate.

There are several questions, collateral to the main one involved in this case, which will not be considered further than to state that we agree with the court of appeals in its conclusion that the actions of the assignee in this case in respect to the stock did not make him a stockholder and, as such, subject to the statutory liability; and that an assignee for the benefit of creditors is not obligated to accept, but is bound to decline to accept, assets which will prove onerous and a burden to the estate. *Hill v. Graham,* 11 Colo. App., 536. These conclusions were reached after careful consideration by that court, and are sustained by the authorities cited. In the view we take of this case, however, a determination of these questions is not necessary to a decision. Section 5151 of the Revised Statutes of the United States provides, that "The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such assosociation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." It is under this section of the statute that the receiver claims the right to file, and have allowed, his claim against John J. Reithmann and J. J. Reithmann & Company in the sum of $105,700, being the par value of the stock held by John J. Reithmann in the German National Bank. The bank became insolvent and closed its doors a few months before the assignment of Reithmann and Reithmann & Company. It is declared in *Hobart v. Johnson,* 8 Federal Reporter, 493, by Blatchford, circuit judge, speaking of the stockholder's liability, that "Every creditor of the bank, becoming such, becomes, *eo instante,* a creditor of the shareholder in respect to the liability in question.

The shareholder becomes thereby a principle debtor. The debt of the bank is his debt at the instant of its creation, and the debt of the bank is referred to only as a measure of the debt of the shareholder." In considering the liability, after the suspension of the bank, Judge Blodgett, in *Irons v. National Bank,* 17 Fed. Rep., 309, says: "After a national bank, therefore, has become insolvent, and has closed its doors for business, its shareholders' liability to creditors must be so far fixed that any transfer of such shares must be held fraudulent and inoperative as against the creditors of the bank. If shareholders, at the time the bank suspended, can evade liability by a transfer of their shares, those to whom they so transfer can also escape by the same method, even after suit is commenced. It seems, therefore, quite clear to me that those who are shareholders when a bank suspends must bear the burden imposed by the law in favor of creditors."

And Mr. Justice Harlan, in Stuart v. Hayden, 169 U. S., 1, speaking of the subject generally, says:

"The safety of a national banking association, so far as its creditors are concerned, depends largely upon the security given by the statutory provision entitling creditors to look to the individual liability of shareholders, including the liability of the estates and funds in the hands of executors, guardians and trustees holding shares of national bank stock. One who holds such shares—the bank at the time being insolvent—cannot escape the individual liability imposed by the statute by transferring his stock with intent simply to avoid that laibility, knowing or having reason to believe, at the time of the transfer on the books of the bank, that it is insolvent or about to fail. A transfer with such intent and under such circumstances, is a fraud upon the creditors of the bank, and may be treated by the receiver as inoperative between the transferrer and himself, and the former held liable as a shareholder without reference to the financial condition of the transferree. The right of creditors of a national bank to look to the individual liability of shareholders, to the

extent indicated by the statute, for its contracts, debts and engagements, attaches when the bank becomes insolvent and the shareholder cannot, by transferring his stock, require creditors to surrender this security as to him, and compel the receiver and creditors to look to the person to whom his stock has been transferred.    This court has said that 'the individual liability of the stockholders is an essential element in the contract by which the stockholders became members of the corporation.    It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation.    There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects as any other contracts of the individual stockholders.'    If the bank be solvent at the time of the transfer. that is, able to meet its existing contracts, debts and engagements, the motive with which the transfer is made, is of course, immaterial.    But if the bank be insolvent, the receiver may, at least, without suing the transferree and litigating the question of his liability, look to those shareholders who, knowing or having reason to know, at the time, that the bank was insolvent, got rid of their stock in order to escape the individual liability to which the statute subjected them. Whether —the bank being in fact insolvent—a transferrer is liable to be treated as a shareholder, in respect to its existing contracts, debts and engagements if he believed in good faith, at the time of the transfer, that the bank was solvent, is a question which, in the view we take of the present case, need not be discussed; although he may be so treated, even when acting in good faith, if the transfer is to one who is financially irresponsible."

From these cases it seems quite clear that the liability of Reithmann was that of a principal debtor, not of a surety; that he became so liable when he became a stockholder; and that any

transfer of his stock after the bank closed its doors was inopera-
tive as against the creditors of the bank, and that whether his
assignee accepted or rejected the stock did not in the slightest
degree change his liability. His contract was, when he bought
his shares, to respond to the demand of the comptroller, in such
sum as the comptroller should deem necessary, up to the par value
of his stock to pay the debts of the bank. He agreed to and did
become primarily liable for the debts of the bank, and this with-
out regard to the ability of any other stockholder so to respond.
He thus, upon the bank's becoming insolvent and closing its
doors, became the debtor, to the extent of the par value of his
stock, of the creditors of the bank, and thereafter nothing could
be done by him to change his liability; and the creditors only
awaited the action of the comptroller to enable them or the re-
ceiver to collect from the shareholders. It being established,
therefore, by the clear weight of authority, that Reithmann was
a debtor of the creditors of the bank, and that the receiver of the
bank, when so required by the comptroller, took the place of the
creditors, it became his duty to file his claim against the estate
of Reithmann. The decision of the district court in allowing
the claim, being in our opinion correct, it is accordingly affirmed.

*Affirmed.*

## *On Petition for Rehearing.*

Mr. JUSTICE GABBERT delivered the opinion of the court.

In the petition for rehearing two points are made: (1) That
the assignee never treated the bank stock as an asset, or assumed
control of it in such way as would make the assets in his hands
subject to the payment of the *pro rata* share of the indebtedness
arising by the assessment of the comptroller; and (2) That at
the time of the assignment there was no claim growing out of the
ownership of the stock by Reithmann which could be urged
against the estate.

It is true, as stated, that the assignee took no affirmative steps by assuming control of the stock which in any manner determined the right of the receiver to have the claim represented by the stock, allowed; but that is not the pivotal question. The real one is simply this: Does not the law, independent of any action on the part of the assignee, make this a provable claim against the estate? When the assignment was made, Reithmann. under the facts of this case, was liable on this stock to the creditors of the bank. No assessment had been made by the comptroller, but the only effect of this step was to determine the amount of this liability, and to permit an action to be maintained thereon.

*Petition for Rehearing denied.*